1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE WARREN, | Case No. 1:22-cv-00594-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO REMAND |
| v. | (ECF No. 5) |
| WINCO FOODS, LLC, et al., | |
| Defendants. | |

## I.

## INTRODUCTION AND BACKGROUND

Nicole Warren ("Plaintiff" or "Warren") initiated this action on April 19, 2022, in the Superior Court of the State of California, County of Stanislaus, case no. CV-22-001728. (ECF No. 1 at 2.) On May 19, 2022, Defendants WinCo Foods, LLC ("WinCo Foods"), and Justin Lamb ("Lamb"), removed this action to the United States District Court for the Eastern District of California. (ECF No. 1.) Currently before the Court[1] is Plaintiff's motion to remand, filed on June 1, 2022. (Pl.'s Mot. Remand ("Mot"), ECF No. 5.) On June 15, 2022, Defendants filed an

---

[1] Following amendment of the Local Rules effective March 1, 2022, a certain percentage of civil cases shall be directly assigned to a Magistrate Judge only, with consent or declination of consent forms due within 90 days from the date of filing of the action. L.R. App. A(m)(1). This action was directly assigned to Magistrate Judge Stanley A. Boone, and no District Judge was assigned. Following the hearing on this motion, the parties consented to jurisdiction of the Magistrate Judge in this action for all purposes. (ECF Nos. 8, 10.) Thus, the motion to remand is properly before the assigned Magistrate Judge for direct adjudication.

opposition.  (Defs.' Opp'n Mot. Remand ("Opp'n"), ECF No. 6.)  On June 27, 2022, Plaintiff filed a reply.  (Pl.'s Reply Supp. Mot. Remand ("Reply"), ECF No. 7.)

A hearing on the motion was held on July 13, 2022.  (ECF No. 9.)  Counsel Amanda B. Whitten appeared by video for Plaintiff.  Counsel Eden Anderson appeared by video for Defendants.  Having considered the moving, opposition, and reply papers, the declarations and exhibits attached thereto, the arguments presented at the July 13, 2022 hearing, as well as the Court's file, the Court issues the following order denying Plaintiff's motion to remand.

## II.

## LEGAL STANDARD

There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331; and (2) diversity jurisdiction under 28 U.S.C. § 1332.  Narayan v. Compass Grp. USA, Inc., 284 F. Supp. 3d 1076, 1082 (E.D. Cal. 2018).  District courts have original federal question jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  District courts have original diversity jurisdiction, including "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  Id.

In a case where "the district courts of the United States have original jurisdiction," the defendant(s) may remove the matter to the federal "district court of the United States for the district and division embracing the place where such action is pending."  See 28 U.S.C. § 1441(a); Caterpillar, 482 U.S. at 392.  A motion to remand is the proper procedure to challenge a removal based on lack of jurisdiction.  28 U.S.C. § 1447.  Ultimately, "[t]he removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction

falls to the party invoking the statute." California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); see also Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper."); Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (same); Narayan, 284 F. Supp. 3d at 1082 (same). Thus, "[w]here doubt regarding the right of removal exists, a case should be remanded to state court." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); see also 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). If a district court determines removal was improper, the court may award the plaintiff costs and attorneys' fee. Narayan, 284 F. Supp. 3d at 1082 (citing 28 U.S.C. § 1447(c); Balcorta v. Twentieth Century–Fox Film Corp., 208 F.3d 1102, 1106 n.6 (9th Cir. 2000)).

## III.

## DISCUSSION

### A.    The Complaints and Removal Documents

Given the status of the initially filed complaint and the first amended complaint, in relation to removal, was somewhat unclear based on the parties' filings, the Court first turns to summarize the status of the pleadings to set the stage for consideration of the arguments developed in the parties' briefing. These matters were addressed at the hearing, and the parties agreed to allow the Court to adjudicate the issues and arguments developed and presented as to the first amended complaint, in the interests of efficiency and because the relevant law and facts were before the Court.

#### 1.    The Complaints

This action was removed to this Court on May 19, 2022. (ECF No. 1.) In moving to remand, Plaintiff states, "[a]t Defendant[s'] request, Plaintiff filed a first amended complaint on May 17, 2022, re-naming the defendant entity. Defendant[s] inexplicably filed an answer to the original complaint on May 19, 2022." (Mot. 3.) Defendants' opposition also indicates that Plaintiff filed a first amended complaint in state court on May 17, 2022, and have attached the amended pleading to their opposition brief. (Opp'n 9; Decl. Eden Anderson Supp. Opp'n Mot.

3

1  Remand ("Anderson Opp'n Decl.") ¶ 2, ECF No. 6-1 at 2, FAC, Ex. A, ECF No. 6-1 at 5-19.)

2  Defendants emphasize the FAC repeats the same allegations as the original complaint, and the

3  only difference in the new pleading is that Plaintiff substituted WinCo Holdings, Inc. ("WinCo

4  Holdings"), as a defendant in lieu of WinCo Foods.  (Opp'n 9.)  Defendants proffer that although

5  the FAC was filed in state court on May 17, 2022, it had not yet been served when the notice of

6  removal was filed.  (Opp'n 9-10; Anderson Opp'n Decl. ¶ 2.)  Defendants state that they were

7  first provided a copy of the FAC, and asked to acknowledge service on May 27, 2022, after the

8  answer to the complaint and notice of removal had already been filed.  (Id.)  Thus, Defendants

9  state that it is thus not inexplicable why an answer to the complaint was filed on May 19, 2022, as

10  Plaintiff asserted.  (Opp'n 10.)

11  Plaintiff's complaint initially filed in state court on April 19, 2022, alleges claims for: (1)

12  disability or medical condition discrimination in violation of the Fair Employment and Housing

13  Act, California Government Code § 12940, *et seq.* (hereinafter "FEHA"); (2) failure to

14  accommodate a disability in violation of FEHA; (3) failure to engage in the interactive process in

15  violation of FEHA; (4) failure to prevent discrimination in violation of FEHA; (5) retaliation for

16  requesting accommodation in violation of FEHA; (6) retaliation for exercising rights under the

17  California Fair Employment and Housing Act, Cal. Gov. Code § 12945.2 *et seq.* ("CFRA"); (7)

18  wrongful termination in violation of public policy; and (8) defamation.  (Decl. Eden Anderson

19  Supp. Removal ("Anderson Removal Decl.") ¶ 2, ECF No. 1 at 6, Compl., Ex. A, ECF No. 1 at

20  11-25.)  The first amended complaint contains the same eight causes of action.  (Anderson Opp'n

21  Decl. ¶ 2, , FAC, ECF No. 6-1 at 5-19.)[2]

22  In the initially filed complaint, Defendant WinCo Foods is identified as "Employer," and

23  Defendant Justin Lamb is identified as "Lamb."  (ECF No. 1 at 11-12.)  In the first amended

24  complaint, Defendant WinCo Holdings is now identified as "Employer," and WinCo Foods has

25  been removed from the first amended complaint.  (ECF No. 6-1 at 5.)

26  The first seven causes of action, in both the initially filed and first amended complaints,

27  are brought against "Defendant, Employer, <u>Only</u>."  (ECF No. 1 at 15-21 (emphasis in original;

28  _____

[2]  The Court notes the FAC attached is still in a "redline" form, with crossed out text.  (ECF No. 6-1 at 5-19.)

ECF No. 6-1 at 9-15 (emphasis in original).)  In both complaints, the eighth cause of action for defamation is brought against Defendants "Employer <u>and</u> Lamb." (ECF No. 1 at 22 (emphasis in original); ECF No. 6-1 at 16 (emphasis in original).)  Thus, the only cause of action against Defendant Lamb is the eighth cause of action for defamation.

The parties agreed at the hearing that the Court can consider the first amended complaint is the operative complaint, and that the arguments pertaining to removal relate to the first amended complaint and the parties named in the first amended complaint, not the initial pleading..  The Court now proceeds on that basis.

### 2.     The Notice of Removal

Defendants' notice of removal proffers this Court has original jurisdiction of this action under 28 U.S.C. § 1331, and that the action may be removed to this Court under 28 U.S.C. § 1441(a) because it arises under Section 301 of the Labor-Management Relations Act ("LMRA"), 29. U.S.C. § 185 (hereinafter "Section 301"). (ECF No. 1 at 2-3.)  Specifically, the notice proffers that Plaintiff's defamation claim is preempted by Section 301 because the claim cannot be resolved without interpreting the applicable collective bargaining agreement, and because the statements allegedly made occurred, if at all, during grievance proceedings.  (ECF No. 1 at 3.)  A copy of the August 11, 2019-August 10, 2024, collective bargaining agreement between WincCo Food, LLC Modesto Distribution Center and General Teamsters Local No. 386 was included in the notice of removal.  (Anderson Removal Decl. ¶ 4, Ex. C, ECF No. 1 at 43-79.)   As a basis for removal, Defendants' notice of removal cites to <u>Scott v. Machinists Auto. Trades Dist. Lodge No. 190 of N. California</u>, 827 F.2d 589, 594 (9th Cir. 1987); <u>Hyles v. Mensing</u>, 849 F.2d 1213, 1216–17 (9th Cir. 1988); and <u>Shane v. Greyhound Lines, Inc.</u>, 868 F.2d 1057, 1063 (9th Cir. 1989). (ECF No. 1 at 3-4.)  The notice is directed at aspects of Plaintiff's complaint's eighth cause of action for defamation, specifically, the allegation that "Lamb published . . . defamatory statements . . . stating as matters of fact that . . . Plaintiff had unprotected absences in violation of company policy and the collective bargaining agreement and that Plaintiff deserved to be terminated." (Compl. ¶ 67; FAC ¶ 67.)  The notice also references Plaintiff's allegation that "[a]s a result of Defendants' defamatory statements, Plaintiff was terminated from her job with

1    Employer." (Compl. ¶ 70; FAC ¶ 70.)

2        Referencing these cases and aspects of Plaintiff's complaint, Defendant's notice of

3    removal submitted that the question of whether Plaintiff had unprotected absences in violation of

4    the collective bargaining agreement and deserved to be terminated in accordance with the terms

5    of the CBA are issues that are inextricably intertwined with the collective bargaining agreement,

6    and Plaintiff's defamation claim is therefore preempted by Section 301.  Defendants filing

7    concluded that because Plaintiff's eighth cause of action for defamation arises under federal labor

8    law, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and removal is proper under

9    28 U.S.C. §§ 1441 and 1446.  (ECF No. 1 at 4.)

10       **B.**    **The Motion to Remand**

11       Defendants removed this action on the proffer that Plaintiff's eighth cause of action for

12   defamation is inextricably intertwined with the terms of the CBA, and thus preempted by Section

13   301.  Plaintiff asserts in her motion to remand, as the master of her complaint, she filed purely

14   state law anti-discrimination, retaliation, and failure to accommodate claims in state court, and

15   she could have, but chose not to file federal claims.  Plaintiff emphasizes the Ninth Circuit has

16   repeatedly held a collective bargaining agreement cannot waive or limit an employee's non-

17   negotiable and non-waivable state law statutory discrimination claims, and a defendant's reliance

18   on a collective bargaining agreement as a defense does not confer federal subject matter

19   jurisdiction.

20       Defendants alternatively submit in the filed opposition, that with the Plaintiff's filing of

21   the first amended complaint, there is now complete diversity between the parties because

22   Defendant Lamb is a "sham" or fraudulently joined defendant, and Plaintiff has not sufficiently

23   pled malice to pierce the California conditional privilege potentially applicable to Lamb.  Plaintiff

24   responds she has sufficiently pled malice to pierce the conditional privilege and that there is no

25   fraudulent joinder.

26       1.    <u>The Eighth Cause of Action for Defamation</u>

27       The eighth cause of action for defamation is brought against Lamb and WinCo Holdings,

28   and is the only claim alleged against Lamb.  While not stated in the complaint, Lamb declares he

is the Warehouse Manager of the WinCo distribution warehouse where Plaintiff previously worked.  (Opp'n 7; Decl. Justin Lamb Supp. Opp'n Mot. Remand ("Lamb Decl.") ¶ 1, ECF No. 6-2 at 1-2.)  In part, Plaintiff alleges Lamb defamed her by publishing false and defamatory statements to "third persons, including agents of Defendant, Employer, and other persons who are not parties to this action . . . that Plaintiff had unprotected absences in violation of company policy and the collective bargaining agreement and that Plaintiff deserved to be terminated." (FAC ¶ 67.)  Plaintiff further alleges that, "[a]s a result of Defendants' defamatory statements, Plaintiff was terminated from her job with Employer." (Id. at ¶ 70.)  Plaintiff alleges she was forced to tell prospective employers that she had been terminated for violation of the company's attendance policy which implies Plaintiff was a poor and unreliable employee who deserved to be fired; and that Defendants knew or should have known that Plaintiff would have to repeat the false statements to potential employers.  (FAC ¶ 72.)  Plaintiff further alleges that Defendants published the defamatory statements knowing the statements to be false, defamatory and untrue and that the made the statements with "animus, hatred, ill will and an intent to vex, harass annoy and injure Plaintiff and with the fraudulent and malicious purpose and design of injuring the reputation and the professional and economic interests of Plaintiff, thereby warranting the imposition of punitive damages against Defendants." (FAC ¶ 74.)  Plaintiff alternatively alleges Defendants published the statements without regard for their truth or falsity and without any reasonable investigation into their truth or falsity, and with a conscious and deliberate disregard for the rights of Plaintiff.  (FAC ¶ 75.)

The eighth cause of action also incorporates all allegations from preceding paragraphs. (FAC ¶66.)  The only other specific reference to Lamb outside of the eighth cause of action is in paragraph 19, where Plaintiff alleges Lamb made false statements about her to the effect that Plaintiff had unprotected absences in violation of company policy and the collective bargaining agreement which implied that she was a poor and unreliable employee who deserved to be terminated.  (FAC ¶ 19.)  The complaint alleges Lamb's statements were not true as Plaintiff's absences were protected, and she did not violate company policy or the collective bargaining agreement and did not deserve to be fired.  (Id.)

2.      The Collective Bargaining Agreement and Grievance

The parties are not in dispute that Plaintiff's employment relationship was governed by a collective bargaining agreement.    A copy of the August 11, 2019-August 10, 2024 collective bargaining agreement between WincCo Food, LLC Modesto Distribution Center and General Teamsters Local No. 386 (the "CBA") was included in the notice of removal.    (Anderson Removal Decl. ¶ 4, Ex. C, ECF No. 1 at 43-79.)

Defendants rely on the fact the CBA addresses topics such as employees' entitlement to certain forms of protected absences, as well as applicable procedures for requesting such time off work.  (Opp'n 8; CBA at Art. 14, 18.)   Article 14 covers various forms of leaves of absence, including personal leave, parental leave, and family medical leave:

> 14.4    PERSONAL LEAVE – Leaves of absence without pay for personal reasons must be requested in writing by the employee and may be approved or rejected at the discretion of management. Employees must notify WinCo management in writing one week in advance when returning from leave of absence if the return date is earlier than originally agreed upon.
>
> The department manager must authorize and sign the leave of absence request prior to being sent to WinCo's Human Resources Department.  All requests and managers authorizations are to be sent by the employee to WinCo's Human Resources Department, Boise, Idaho for final approval which will not be withheld if approved by the department manager.
>
> 14.5    PARENTAL LEAVE and/or FAMILY MEDICAL LEAVE – State and Federal law applicable.
>
> Family Medical Leave – State and Federal leaves are handled by a Third Party Administrator (Administrator).    Employees must request leave protection in a timely manner from the Administrator. Contact information regarding the Administrator may be obtained from the DC Personnel Clerk.  Questions may be directed to the Administrator or the HR Compliance Department at the General Office in Boise, Idaho.
>
> The Employer will make its best effort to pay employees for leaves taken under this section within 30 days from the date the leave commences.

(ECF No. 1 at 57-58.)  Article 18 pertains to sick leave, and includes the following provision for paid sick leave:

> 18.3    Paid sick leave under this article shall begin on the first (1st)

full scheduled working day missed due to bona fide illness or off the job accident whether hospitalized or non-hospitalized with the following exceptions: paid sick leave shall begin on the second day missed for third absence in a revolving year, on the third day missed for the fourth absence in a revolving year, and not until the fourth day missed for the fifth absence and any greater number of absences in a revolving year. However, as long as the employee's sick bank is at sixty (60) hours or more at the beginning of any absence, sick pay shall begin on the first full scheduled day missed for that absence. Sick leave shall continue for each working day of illness thereafter if otherwise payable under this article. Sick leave pay shall be paid for the hours scheduled for the day missed, or for part time employees or employees without a fixed work week, in an amount per day equal to the average daily number of regular hours worked by the employee during the fifty-two (52) weeks immediately proceeding his/her last anniversary date, not to exceed the maximum straight time hours possible for the day missed, times his/her current hourly rate.

(ECF No. 1 at 61-62.) Defendants also direct the Court to Article 7, which sets forth a system of progressive discipline for substandard performance, and a mandatory timeline for issuing discipline:

### ARTICLE 7—DISCHARGES WITH PRIOR DISCIPLINE OR WARNING

7.1    The Company's policy is not to discharge any employee for substandard performance without first calling it to their attention. An instance of inadequate performance, violation of work rules, or improper activity will be discussed with the individual verbally by the supervisor or management. A memorandum of this discussion will be placed in the employee file which the employee will be asked to acknowledge. A second instance of the same or any other type within a twelve (12) month period will result in written warning which the employee will be asked to acknowledge. A third instance of any violation of Company policies or any type of inadequate performance within a twelve (12) month period will result in a second written warning or suspension. Any further instances within a twelve (12) month period can result in termination. The appropriate level of corrective action may vary in individual cases depending on such factors as the employee's prior record, including length of service; the nature and severity of the offense; and the impact of the offense on the Company's business.

7.2    Any formal warnings must be issued within fifteen (15) days of the Company's first knowledge of the offence. . . . Except in very serious cases, employees will not be subject to termination unless they have four (4) instances of formal discipline (verbal, written, suspension) in effect. At least one of the four instances must be a suspension but there is no requirement for any particular sequence of warnings. It is agreed that verbal and written warnings shall be considered to be in effect for nine (9) months, and suspensions for

9

> (12) months, except that the time period in force shall be extended by an equal number of days for any leave period or light duty period of any length; or for any other absence (greater than 14 days) for any other reason. *For the term of the agreement, the company will continue the practice of treating attendance separately from other issues with respect to progressive discipline.*

(ECF No. 1 at 49-50 (emphasis added by Defendants).)   Finally, The CBA also contains procedures for the settlement of disputes thereunder, including through a grievance procedure. (<u>See</u> CBA, Art. 19, ECF No. 1 at 62-64 ("A grievance is defined as a claim by the Union or employee(s) that a specific provision of this Agreement has been violated by the Company").)

Lamb declares that in the wake of her termination, Plaintiff did pursue a grievance under the CBA.  (Lamb Decl. ¶¶ 2-3, Ex. A, ECF No. 6-2 at 3-4.)[3]  The grievance letter is dated July 15, 2021, sent by the Teamsters Union representative to Defendant Lamb, stating Plaintiff was terminated for an alleged violation of company policy and that the "Union feels this termination does not meet the terms of Just Cause."  (<u>Id.</u>)  Lamb also declares that in connection with the termination, Lamb made statements that Plaintiff had unprotected absences in violation of company policy and the CBA, and that these statements were made in connection with discipline that Plaintiff received under the CBA, and also in connection with the grievance.  (Lamb Decl. ¶ 4.)

### 3.   The Court Finds Plaintiff's Defamation Claim is Preempted by Section 301

In consideration of the legal principles, the relevant claims, and the parties' arguments presented in briefing and at the hearing, the Court finds Plaintiff's eighth cause of action for defamation is inextricably intertwined with interpretation of the CBA, and therefore preempted by

---

[3]  Defendants proffer that in addition to the face of the complaint, courts may look to additional "summary judgment type evidence" when ruling on a motion to remand and considering the propriety of removal on diversity grounds. (Opp'n 9 n. 1, citing <u>Morris v. Princess Cruises, Inc.</u>, 236 F.3d 1061, 1068 (9th Cir. 2001).)  The Court finds it may appropriately consider such evidence that is present outside of the pleadings, both for the fraudulent joinder analysis, and for the preemption analysis.  <u>See Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.</u>, 761 F.3d 1027, 1034–35 (9th Cir. 2014) (""[W]hen a defendant asserts that a claim is completely preempted, examination of extra-pleading material is permitted."); <u>Olea v. Teichert Pipelines, Inc.</u>, No. 2:21-CV-01675-RGK-PD, 2021 WL 1839683, at *2 (C.D. Cal. May 7, 2021) (same); <u>Nava v. Rich Prod. Corp.</u>, No. 218CV10449RGKDFM, 2019 WL 3526342, at *2 (C.D. Cal. Aug. 2, 2019) ("[W]hen a defendant asserts that a claim is completely preempted, examination of extra-pleading material is permitted[,] [s]imilarly, where an issue of fraudulent joinder is raised in a question of diversity jurisdiction, courts may pierce the pleadings and consider summary judgment-type evidence such as affidavits and deposition testimony." (citing <u>Morris</u>, 236 F.3d at 1068; <u>Hawaii ex rel. Louie</u>, 761 F.3d at 1034)).

Section 301 of the LMRA.  The Court shall first summarize the most relevant legal standards before turning to a more pointed consideration of the cases proffered by the parties.

### a.      General Legal Principles

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).  "[T]he Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts."  Curtis v. Irwin Indus., Inc., 913 F.3d 1146, 1151 (9th Cir. 2019) (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985); Teamsters v. Lucas Flour Co., 369 U.S. 95, 103–04 (1962)).  "Thus, any suit 'alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law.' "  Id. (quoting Lueck, 471 U.S. at 210).  "Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' "  Id. (quoting Metro. Life Ins. v. Taylor, 481 U.S. 58, 65 (1987)).

The Ninth Circuit has explained federal preemption under Section 301 and similar labor statutes "is an essential component of federal labor policy" for three main reasons.  Alaska Airlines Inc. v. Schurke, 898 F.3d 904, 917-19 (9th Cir. 2018) (en banc).  First, a collective bargaining agreement is more than just a contract, it is "an effort to erect a system of industrial self-government[,]" dispute resolution is itself a part of a "continuous collective bargaining process," and to set aside the parties' grievance and arbitration process is to undo an integral part of the workplace self-governance scheme.  Id. at 918 (citations omitted).  Second, a collective bargaining agreement is not strictly limited to its terms, but gives rise to a broader common law of a particular industry or of a particular plant, and resolution of disputes may therefore "assume proportions of which judges are ignorant."  Id. (citations omitted).  Third, grievance and arbitration are believed to provide certain procedural benefits, including a more "prompt and

1  orderly settlement" of disputes than that offered by the ordinary judicial process, sparing the

2  expense and effort of time-consuming appeals which employees may be less able to bear than the

3  employer, and intending to result in less accumulation of minor disputes and diminish risk of

4  interruption of commerce.  Id. at 918-19 (citations omitted).

5          Notwithstanding these interests, the Supreme Court has also "stressed that '§ 301 cannot

6  be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter

7  of state law.' "  Curtis, 913 F.3d at 1152 (quoting Livadas v. Bradshaw, 512 U.S. 107, 123

8  (1994)).  "To extend § 301 preemption beyond its defined role 'would be inconsistent with

9  congressional intent.' "  Id. (quoting Lueck, 471 U.S. at 212).  "Setting minimum wages,

10  regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety,

11  prohibiting discrimination in employment, and establishing other worker rights remains well

12  within the traditional police power of the states, and will naturally result in labor standards that

13  affect workers differently from one jurisdiction to the next, even when those workers fall under a

14  single labor agreement."  Schurke, 898 F.3d at 919–20.  Therefore, "claims alleging violations of

15  such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA."

16  Curtis, 913 F.3d at 1152.

17          "To ensure that § 301 preemption 'extends only as far as necessary to protect the role of

18  labor arbitration in resolving CBA disputes,' we employ a two-step test."  Curtis, 913 F.3d at

19  1152 (quoting Schurke, 898 F.3d at 913-14); see also Schurke, 898 F.3d at 920 ("The line

20  'between preempted claims and those that survive' is not one 'that lends itself to analytical

21  precision[,]' . . . [t]his circuit, however, has distilled the Supreme Court's . . . case law into a two-

22  part inquiry into the nature of a plaintiff's claim."); Torres v. S. California Permanente Med. Grp.,

23  No. CV221910MWFMARX, 2022 WL 2116339, at *6 (C.D. Cal. June 13, 2022).  First, the court

24  determines "whether the asserted cause of action involves a 'right [that] exists solely as a result of

25  the CBA.' "  Id. (quoting Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1032 (9th

26  Cir. 2016)).  If the claim seeks to purely vindicate a right or duty created by the collective

27  bargaining agreement itself, then the claim is preempted.  Id. (citations omitted).

28          If not, then second, the court asks whether the plaintiff's state law right is substantially

dependent on analysis of the collective bargaining agreement, a question "which turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." Id. (alteration in original) (quoting Kobald, 832 F.3d at 1033). At this step, "interpretation" is construed narrowly, and "claims are only preempted to the extent there is an active dispute over the meaning of contract terms." Id. (quoting Schurke, 898 F.3d at 921) (interpretation means something more than to consider, refer to, or apply). Thus, "a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application" of the relevant collective bargaining agreement. Id. (citing Livadas, 512 U.S. at 125).

"It is not dispositive that a complaint is framed without reference to a CBA." Kirton v. Summit Med. Ctr., 982 F. Supp. 1381, 1385 (N.D. Cal. 1997) (citing Lueck, 471 U.S. at 210–11). "[E]ven suits based on torts, rather than on breach of a CBA, are governed by federal law if their evaluation is 'inextricably intertwined with consideration of the terms of [a] labor contract.' " Id. (quoting Lueck, 471 U.S. at 213) (finding defamation and intentional infliction of emotional distress claims preempted).

**b.      Consideration of the Parties' Arguments and the Court's Findings**

Neither party argues the defamation claim does nor does not seek to purely vindicate a right or duty created by the CBA, and thus the Court proceeds to the second step of the two-step test. See Schurke, 898 F.3d at 920. The parties' arguments essentially distill down to and focus on whether evaluation of the defamation claim is inextricably intertwined with consideration of the CBA.

i.      Plaintiff's Primary Arguments

Plaintiff submits it is well settled Section 301 preemption does not trump substantive and mandatory state law regulation of the employee-employer relationship, citing Livadas, 512 U.S. at 121–23; Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (9th Cir. 2005). (Mot. 4.)[4]

---

[4]  Before proceeding into Plaintiff's arguments, the Court notes Defendants respond Plaintiff incorrectly frames her motion to remand in relation to the bases for removal contained in the notice of removal. Defendants appear correct. As summarized above, the notice of removal was pointedly directed at Plaintiff's eighth cause of action for defamation. However, Plaintiff's motion to remand largely proceeds on the basis that Defendants' notice of removal was essentially directed at all of Plaintiff's claims, including FEHA, CFRA, wrongful termination, and the defamation claim, on the basis that they are preempted under Section 301 because of the CBA. In reply, Plaintiff does not directly dispute or concede the misplaced arguments, and proceeds to only address the defamation claim as

In <u>Livadas</u>, the employer argued "disposition of a union-represented employee's penalty claim entails the 'interpretation or application' of a collective-bargaining agreement (since determining the amount owed turns on the contractual rate of pay agreed) resort to a state tribunal would lead it into territory that Congress, in enacting § 301, meant to be covered exclusively by arbitrators." <u>Id.</u> at 121.  The Supreme Court ultimately rejected the scope of this argument.  The Court acknowledged that prior decisions had read the text of Section 301 as not only granting "federal courts jurisdiction over claims asserting breach of collective-bargaining agreements but also [authorizing] the development of federal common-law rules of decision, in large part to assure that agreements to arbitrate grievances would be enforced, regardless of the vagaries of state law and lingering hostility toward extrajudicial dispute resolution."  <u>Id.</u> at 121-22  Nonetheless, the Supreme Court found that "while this sensible 'acorn' of § 301 pre-emption recognized in <u>Lucas Flour</u> has sprouted modestly in more recent decisions of this Court . . . it has not yet become, nor may it, a sufficiently 'mighty oak.' "  <u>Id.</u> at 122 (citations omitted).

In rejecting the employer's argument, the Supreme Court noted "the pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement . . . nor by parties' efforts to renege on their arbitration promises by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements."  <u>Id.</u> at 122-23 (citations and internal quotation marks omitted).  The Supreme Court essentially saw the only need to reference the collective bargaining agreement was to pull a rate of pay from the document, and this was not enough for preemption.  <u>Id.</u> at 124-25 ("[T]he primary text for deciding whether Livadas was entitled to a penalty was not the Food Store Contract, but a calendar . . . only issue

---

to preemption.  Therefore it appears Plaintiff does not dispute Defendants' position that Plaintiff's motion is an overbroad framing in relation to the notice of removal.  (See Reply generally, ECF No. 7.)  The bulk of reply briefing then focuses on Defendants' alternative argument regarding fraudulent joinder and diversity jurisdiction.  Given the tenor of Plaintiff's reply briefing and the arguments and cases cited therein compared to those in the original motion, the Court can largely apply the arguments and principles, as more pointed to the eighth cause of action for defamation, where relevant to the eighth cause of action and basis for removal.  Indeed, Plaintiff later applies these cases to the defamation claim in both the original motion and reply briefing.  (See Mot. 5 ("The same cases cited above apply to Plaintiff's defamation claim as well.").)

raised by Livadas's claim, whether Safeway 'willfully fail[ed] to pay' her wages promptly upon severance, . . . was a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer[,] [t]here was no indication that there was a 'dispute' in this case over the amount of the penalty to which Livadas would be entitled, and *Lingle* makes plain in so many words that when liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301.").

In <u>Valles</u>, the Ninth Circuit recognized Section 301 preemption is not designed to trump substantive and mandatory state law regulation of the employer-employee relationship, and had not become the "mighty oak" that would cover all aspects of such substantive state law.  <u>Valles</u>, 410 F.3d at 1076 (citations omitted).  Therefore, "not every claim which requires a court to refer to the language of a labor-management agreement is necessarily preempted."  <u>Id.</u> (quoting <u>Associated Builders & Contractors, Inc. v. Local 302 Int'l Bhd. of Elec. Workers</u>, 109 F.3d 1353, 1357 (9th Cir.1997)).  The Ninth Circuit noted the Supreme Court had "sought to preserve state authority in areas involving minimum labor standards," and Section 301 could not be "read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law."  <u>Id.</u> (quoting <u>Livadas</u>, 512 U.S. at 123).  Therefore, "[a] claim brought in state court on the basis of a state-law right that is 'independent of rights under the collective-bargaining agreement,' will not be preempted, even if 'a grievance arising from precisely the same set of facts could be pursued.' "  <u>Id.</u>  Further, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."  <u>Id.</u> (quoting <u>Livadas</u>, 512 U.S. at 124).

"Thus, in order for complete preemption to apply, 'the need to interpret the CBA must inhere in the nature of the plaintiff's claim.  If the claim is plainly based on state law, § 301 pre-emption is not mandated simply because the defendant refers to the CBA in mounting a defense.' "  <u>Valles</u>, 410 F.3d at 1076 (quoting <u>Cramer v. Consol. Freightways, Inc.</u>, 255 F.3d 683, 691 (9th Cir. 2001)).  "Congress is understood to have legislated against a backdrop of generally

applicable [state] labor standards," and Section 301 preemption "does not permit parties to waive, in a collective bargaining agreement, nonnegotiable state rights conferred on individual employees." Valles, 410 F.3d at 1076 (first quoting Livadas, 512 U.S. at 123 n.17; then quoting Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1111 (9th Cir. 2000)). "Section 301 must not be construed to give employers and unions the power to displace state regulatory laws . . . [w]here, however, under state law waiver of state rights may be permissible, the CBA must include clear and unmistakable language waiving the covered employee's state right for a court even to consider whether it could be given effect." Valles, 410 F.3d at 1076 (internal quotation marks and citations omitted).

Thus, Plaintiff argues that even if the CBA may be referred to or applied (as distinguished from "interpreted"), in the course of resolving a state claim, Section 301 preemption is not applicable; that this is true even if a grievance arising from the same facts could be pursued under the CBA; and preemption is not mandated simply because the employer refers to the CBA in defense.. See Valles, 410 F.3d at 1076; Livadas, 512 U.S. at 124-25; Cramer, 255 F.3d at 690–91 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished . . . [b]ased on these principles, *Livadas* held that because the plaintiff's claim required the court only to 'look to' the CBA to determine her rate of pay, there was not even a 'colorable argument' for preemption, because her claim was 'entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer.' " (quoting Livadas, 512 U.S. at 124)).

These more pointed legal principles emphasized by Plaintiff are generally contained above in the Court's summary of the applicable legal framework for the preemption analysis, in the immediately preceding subsection. Against this backdrop of law,[5] turning to the complaint here,

---

[5] As noted above, Defendants' notice of removal focused only on the eighth cause of action, and not the FEHA or CFRA claims. Thus, Plaintiff's primary arguments made in the motion pertaining to these causes of action are largely not directly applicable, however, the cases cited and arguments made regarding these statutes have overlapping relevance. Plaintiff argues her various claims under the FEHA and CFRA are based on her termination following leave and request for accommodation, and these claims are independent of a labor contract. (Mot. 5.) Plaintiff was not, for example, complaining her employer was making her do something that violated the CBA, or that she was being deprived of rights she held through the CBA. Rather, Plaintiff states she was complaining that she

Plaintiff argues resolution of her purely state law claims will not require any interpretation of a collective bargaining agreement, and "[i]n fact, there is no reference to a collective bargaining agreement in Plaintiffs' complaint."  (Mot. 5.)   The Court stops at this proffer, as Plaintiff's statement is flatly incorrect.  As noted above, and as specifically referenced in Defendants' notice of removal (ECF No. 1 at 3), Plaintiff's eighth cause of action for defamation alleges that "Lamb published . . . defamatory statements . . . stating as matters of fact that . . . Plaintiff had unprotected absences in violation of company policy and the collective bargaining agreement and that Plaintiff deserved to be terminated."  (FAC ¶ 67.)

As to the defamation claim, Plaintiff argues that "[e]ven though one of the statements Plaintiff alleges was false tangentially mentions the CBA, this is not enough" (Mot. 5-6), as courts hold that not every dispute tangentially involving a provision of a collective-bargaining agreement is pre-empted.  See Lueck, 471 U.S. at 211 ("Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law.").  Plaintiff proffers Defendants'

---

was entitled to protected medical leave and an accommodation under the laws of California, and the State's interest in providing the causes of action available under the FEHA and CFRA are the enforcement of the underlying statute or policy, not the regulation of employment relationships.  (Mot. 5.)  Plaintiff argues under California law, an employee who has been discriminated or retaliated against because of her disability, or need for medical leave or accommodation, may file a claim under these California laws, and her legal rights under FEHA and CFRA are independent of her rights under the CBA.  See Lingle, 486 U.S. at 406–07 (noting to show retaliatory discharge in Illinois, plaintiff must proffer facts satisfying certain elements, and that "[n]either of the elements requires a court to interpret any term of a collective-bargaining agreement," "[t]hat to defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge," that "this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement," and "[t]hus the state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.").

Plaintiff additionally argues that the factual inquires involved in determining whether Defendants discriminated or retaliated against her will not require the Court to construe the CBA, as the elements of her claims will be solely based on whether Plaintiff was an employee protected by FEHA and CFRA, and whether Defendants violated rights under those statutory schemes.  (Mot. 5.)  Plaintiff argues these are state standards, not provisions of the CBA, and California has a strong public policy interest in making sure disabled employees are treated fairly, despite what a CBA may say.  (Mot. 5.)  In reply briefing focusing on the defamation claim (Reply 1), Plaintiff does cite to Lingle again for the statement that "as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement.  In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted." Lingle, 486 U.S. at 413 n.12.  The Court considers these principles and arguments where relevant to the more pointed removal based on the defamation claim, and where such removal analysis is impacted by the presence of the other claims not addressed in the notice of removal.

suggestion that her claim relies on statements made in her grievance process, is not true.  (Mot. 5.)  Rather, Plaintiff contends her complaint makes no mention of the grievance procedure at all, and instead the complaint "frames these as internal statements that caused her termination as well as statements she was forced to re-publish after her termination."  (Mot. 5.)  As for the one statement that Plaintiff acknowledges "tangentially mentions the CBA, [arguing] this is not enough," Plaintiff emphasizes that while a CBA may contain relevant information such as a rate of pay useful in determining damages, and although federal law would govern interpretation of the agreement to determine proper damages, the underlying state law claim would stand if not otherwise preempted.  Lingle, 486 U.S. at 413 n.12.  Plaintiff also emphasizes Section 301 preemption "does not abrogate the general rule that a defense of preemption does not create federal question jurisdiction."  Bonilla v. Starwood Hotels & Resorts Worldwide, Inc., 407 F. Supp. 2d 1107, 1111 (C.D. Cal. 2005) (citing Caterpillar, 482 U.S. at 398–99).  Therefore, Plaintiff submits that because her claims are based solely on state law, Defendants' reference to the CBA does not come close to satisfying their heavy burden to demonstrate removal is proper under Section 301.

      ii.      The Court finds in Favor of Defendants and Concludes the Defamation Claim is Preempted by Section 301

Defendants submit that Plaintiff has misconstrued the basis for removal as her wrongful termination, FEHA and CFRA claims were not cited as grounds for removal, and Defendants did not cite any "defense of preemption" to these claims as a grounds for removal.  (Opp'n 10-11.) Defendants thus contend because their notice of removal was directed at the defamation claim, and because removal is proper under Section 301 preemption based on Plaintiff's defamation claim, the arguments presented in the bulk of Plaintiff's moving papers,[6] do not need to be addressed.  Again, the Court largely agrees, as: Plaintiff does not dispute this contention in reply briefing; Defendants accurately describe the notice of removal's as directed at the defamation claim; and Plaintiff's reply briefing only directly addresses the defamation claim as to

---

[6]  Defendants' briefing mistakenly references 4:14-15:22 and 6:15-17:16 rather than pages 4:14-5:22, and 6:15-7:16 of Plaintiff's briefing.  (Opp'n 11.)

preemption.  Thus Plaintiff appears to implicitly concede by focusing her reply argument on the counterargument that the defamation claim is not inextricably intertwined with the CBA (Reply 1-2), and then proceeding to address the arguments concerning diversity jurisdiction and fraudulent joinder (Reply 2-8).  As for the defamation claim, while Plaintiff argues her defamation claim furnishes no grounds for removal, Defendants submit that her motion to remand does not address the cases that Defendants cited in the notice of removal in support of Section 301 preemption, and that these cases control and establish that removal was proper.  The Court agrees.  Despite Defendants' focus in opposition on the absence of a response by Plaintiff addressing these cases, Plaintiff does not address or cite these cases in reply briefing.

Turning to these cases, in <u>Scott</u>, the district court remanded a defamation claim to state court, and the Ninth Circuit vacated that order, concluding the claim had been properly removed to federal court.  <u>Scott v. Machinists Auto. Trades Dist. Lodge No. 190 of N. California</u>, 827 F.2d 589, 594 (9th Cir. 1987).  The plaintiff in <u>Scott</u> alleged his supervisor defamed him by accusing him of "poor work and a poor attitude" "in the presence of other employees." <u>Id.</u>at 591.  The plaintiff was later terminated, and pursued a grievance under a collective bargaining agreement. <u>Id.</u>  The Ninth Circuit stated Scott's "defamation claim is also based on facts inextricably intertwined with the grievance machinery of the collective bargaining agreement" and found the claim preempted by Section 301.  <u>Id.</u> at 594.  The Ninth Circuit found the "allegedly defamatory remarks were made during the course of a counseling session and the prearbitration meetings and investigative hearings," and stated "the defamation claim cannot be evaluated apart from the grievance procedure provided by the contract, and thus is preempted by federal labor law." <u>Id.</u>

Defendants argue <u>Scott</u> is controlling here because of Plaintiff's specific allegations of defamation in relation to the CBA.  (FAC ¶ 67.)  Defendants maintain that whether those statements were made during Plaintiff's grievance proceedings, and/or beforehand as Plaintiff maintains and in anticipation of discipline under the CBA, Plaintiff's allegations are inextricably intertwined with the grievance machinery and her defamation claim is preempted by Section 301. <u>Scott</u>, 827 F.2d at 591; <u>Hyles v. Mensing</u>, 849 F.2d 1213, 1216 (9th Cir. 1988).  In the motion to remand, Plaintiff states that her defamation claim does not rely on statements made in her

grievance process and that, instead, her complaint alleges that Lamb's statements preceded and caused her termination.  (ECF No. 5 at 5:24-28.)  Defendants state this distinction Plaintiff seeks to make is immaterial.  (Opp'n 12 n.2.)  Defendants do not clearly support this specific contention that the difference is immaterial with caselaw, however, the Court ultimately concludes the defamation claim is inextricably intertwined for all the reasons herein discussed.

Defendants also direct the Court to Shane.  There, the Ninth Circuit found a defamation claim to "rest on the Notices of Intent to Discipline, which, along with the discharge notices, [were] the only documents in the record containing the allegations."  Shane, 868 F.2d at 1063. The Ninth Circuit noted that the "CBA requires employers to notify employees of intended disciplinary action in writing, and simultaneously to notify their Union."  Id.  The Ninth Circuit held that "[a]ny claim based on the discharge notification is, therefore, 'inextricably intertwined' with the CBA."  Id.

Defendants submit this case is like Shane, as here, the CBA sets forth employees' entitlement to certain forms of protected absences, including various forms of leaves of absence and sick leave, as well as applicable procedures for requesting such time off of work.  (Opp'n 12; CBA Art. 14, 18.)  Defendants highlight the CBA sets forth various requirements for progressive discipline but "vaguely provides" that "the company will continue the practice of treating attendance separately from other issues with respect to progressive discipline."  (CBA Art. 7.1-7.2.)  The CBA specifies a grievance procedure.  (CBA Art. 19.)  Defendants submit that the question of whether Plaintiff's absences were "unprotected" or not is an issue that is inextricably intertwined with, and requires interpretation of, the CBA and its absence and sick leave provisions.  (Opp'n 12.)  Defendants further contend that similarly, the question of whether Plaintiff's termination for unprotected absences was justified and whether she "deserved to be terminated" in accordance with the terms of the CBA requires interpretation of the CBA, including whether Plaintiff's absences provided cause for her termination.  (Opp'n 12-13.) Defendants further highlight that the CBA in fact indicates the parties' past practice shall govern progressive discipline for attendance issues, and there is no way to know what that past practice is without interpreting the CBA and the negotiating parties' past practice of handling absence-based

discipline thereunder, and therefore the question of whether Plaintiff "deserved to be terminated" for her attendance issues requires interpretation of the CBA and the parties' associated past practice.  (Opp'n 13.)

Based on these arguments, the caselaw, and the CBA, the Court finds Defendants have sufficiently demonstrated that Plaintiff's eighth cause of action for defamation as alleged (FAC ¶¶ 67), is inextricably intertwined with interpretation of the terms of the CBA.  The Court concludes "evaluation of the [defamation] tort claim is inextricably intertwined with consideration of the terms of the labor contact," and thus the claim "is preempted and may be removed to federal court."  Hyles, 849 F.2d at 1216 (quoting Lueck, 471 U.S. at 213).[7]  The Court finds the Ninth Circuit's discussion in Hyle to be particularly instructive as to tort claims generally:

> To determine whether section 301 preempts a state tort claim, we do not look to how the complaint is cast. Rather, we inquire whether "the claim can be resolved only by referring to the terms of the CBA." Young, 830 F.2d at 999. If the state tort action "as applied here confers nonnegotiable state-law rights on employers or employees independent of any right established by contract," the claim is not preempted. Allis–Chalmers, 471 U.S. at 213, 105 S.Ct. at 1912 (cited in Paige, 826 F.2d at 863 and Young, 830 F.2d at 999). A state law claim is independent for the purposes of Section 301 if "resolution of ... [it] does not require construing the collective bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S.399, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988). However, if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract," it is preempted and may be removed to federal court. Id. . . .
>
>  . . . Hyles' claims for emotional distress are grounded on the assertion that some defendants failed to process his grievance complaints, filed false reports accusing him of work infractions, removed him as union delegate, arbitrarily demanded that he submit to a physical examination, and terminated him without cause.
>
> After reviewing these allegations we conclude that they are not based on non-negotiable state law rights and are "inextricably intertwined with consideration of the terms of the labor contract." Hyles points to no independent, non-negotiable state standard by which we can judge the defendants' conduct. Because the CBA, rather than a nonnegotiable state law standard, defines the defendants' authority and Hyles' rights with regard to the conduct complained of, Hyles' claims are not independent of the CBA. The CBA establishes the defendants' responsibility to process grievance complaints. It establishes also procedures by which union delegates

---

[7]  While the Ninth Circuit citation signal in Hyles appears to attribute this quote to Lingle, 486 U.S. 399, the quoted material appears derived from the previous citation to Allis-Chalmers Corp., 471 U.S. at 213.

> may be elected and removed. The CBA grants to the defendants authority to demand that Hyles submit to a physical examination. It grants to him the right to be terminated only for cause.

Hyles, 849 F.2d at 1216. The Court finds it significant that the CBA covers processes for requesting leave, related progressive discipline, sets forth a grievance procedure, and will guide a determination of whether Plaintiff was terminated for cause. Id.

The Court finds support in similar district court cases where courts found defamation claims preempted by Section 301, even in the face of other FEHA and CFRA claims. In Torres, the plaintiff brought causes of action for retaliation in violation of CFRA, retaliation and age and disability discrimination in violation of the FEHA, wrongful termination in violation of public policy, failure to remedy or prevent discrimination or retaliation in violation of FEHA, defamation, and intentional infliction of emotional distress. Torres v. S. California Permanente Med. Grp., No. CV221910MWFMARX, 2022 WL 2116339, at *1, 7 (C.D. Cal. June 13, 2022). The Torres court recently issued a decision finding all claims preempted because of the progressive discipline system contained within the collective bargaining agreement, and thus inextricably intertwined:

> It is unclear how Plaintiff's claim can be resolved without interpretation of the progressive discipline policy under the CBA. As Defendants argue, in order to prove Plaintiff's claims, including that she was retaliated against for taking medical leave, for her disability, and for her age, wrongful termination, failure to prevent discrimination or retaliation, and defamation, she will need to prove that, under the progressive discipline guidelines applicable to union employees, her termination was inappropriate.

> This will inevitably require interpretation of the CBA given Plaintiff's allegation of her high performance at work and subsequent termination because evidence will need to be set forth concerning appropriate discipline under each step of the guidelines and relevant factors, and the ultimate determination will necessarily interpret the guidelines to conclude whether the termination was proper. The right asserted, to progressive disciplinary action against a union employee, necessarily requires interpretation of the CBA, not just referencing or consideration thereof. See Allis-Chalmers, 471 U.S. at 218.

> Whether Plaintiff's termination was appropriate in light of the progressive disciplinary guidelines requires interpretation of the guidelines in the CBA. Plaintiff's claims are therefore preempted by § 301 of the LMRA.

22

1    2022 WL 2116339, at *7.

2            Under Article 7.1 of the CBA here, "[a]n instance of inadequate performance, violation of

3    work rules, or improper activity will be discussed with the individual verbally by the supervisor

4    or management" and a "memorandum of this discussion will be placed in the employee file which

5    the employee will be asked to acknowledge."  (ECF No. 1 at 49.)  This supports a finding of

6    preemption based on the defamation claim.  See Shane, 868 F.2d at 1063 ("Neither the complaint

7    nor the appellate brief allege specific facts to support this defamation claim . . . claim appears to

8    rest on the Notices of Intent to Discipline, which, along with the discharge notices, are the only

9    documents in the record containing the allegations of wrongdoing . . . CBA requires employers to

10   notify employees of intended disciplinary action in writing, and simultaneously to notify their

11   Union," thus any claim based on the discharge notification "inextricably intertwined" with the

12   CBA); Lee v. CVS Pharmacy, Inc., No. LACV1600160JAKEX, 2016 WL 8711500, at *4 (C.D.

13   Cal. July 29, 2016) ("Other district courts have interpreted Shane to hold that a defamation claim

14   is preempted if the allegedly defamatory statements were made in a notice the defendant was

15   required to issue under the applicable collective bargaining agreement . . . The facts here parallel

16   those in Shane.  The CBA requires that CVS provide employees with written notice of intended

17   disciplinary action.").

18           Plaintiff alleges defamatory statements that "Plaintiff had unprotected absences in

19   violation of company policy and the collective bargaining agreement and that Plaintiff deserved

20   to be terminated."  (FAC ¶ 67.)  Lamb declares that in the wake of her termination, Plaintiff did

21   pursue a grievance under the CBA.  (Lamb Decl. ¶¶ 2-3, Ex. A, ECF No. 6-2 at 3-4.)  The

22   grievance letter is dated July 15, 2021, sent by the Teamsters Union representative to Defendant

23   Lamb, stating Plaintiff was terminated for an alleged violation of company policy and that the

24   "Union feels this termination does not meet the terms of Just Cause."  (Id.)  These allegations and

25   facts support a finding of preemption.  See Kirton v. Summit Med. Ctr., 982 F. Supp. 1381, 1389

26   (N.D. Cal. 1997) ("Additionally, in direct contrast to Tellez and Jackson, the CBA in this case

27   governs Defendants' allegedly defamatory conduct . . . [t]he CBA contains provisions requiring

28   discharge for just cause [and] [t]he CBA must be interpreted to determine whether accusations

23

that Plaintiff stole narcotics and the basis for those accusations amounts to just cause discharge under the CBA . . . because Plaintiff's defamation claim arises from the same facts [w]hich form the basis of her section 301 breach of contract claim and the CBA governs the allegedly defamatory conduct, Plaintiff's defamation claim is preempted by section 301.").

Plaintiffs argue preemption does not apply simply because it is raised as a defense.  See Valles, 410 F.3d at 1076 ("Thus, in order for complete preemption to apply, 'the need to interpret the CBA must inhere in the nature of the plaintiff's claim.  If the claim is plainly based on state law, § 301 pre-emption is not mandated simply because the defendant refers to the CBA in mounting a defense.' " (quoting Livadas, 512 U.S. at 124)).  Defendants are not simply referring to the CBA in mounting a defense, as Plaintiff alleges, rather, the defamation claim is expressly grounded in the allegation that Plaintiff was defamed by Defendants making defamatory statements that the CBA (contract terms) were violated, when she alleges she did not in fact violate the terms of the CBA (FAC ¶ 67).  Bringing the claim as a defamation claim rather than as a breach of the CBA contract claim does not escape the fact that "any suit 'alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law.' "  Curtis, 913 F.3d at 1151 (quoting Lueck, 471 U.S. at 210).  A state law claim is independent for purposes of Section 301 if resolution of it does not require construing the relevant collective bargaining agreement.  Hyles, 849 F.2d at 1216 (quoting Lingle, 486 U.S. at 407).  The Court finds resolution of the defamation claim requires construing various terms of the CBA. (See FAC ¶ 67; CBA Art. 7, 14, 18, 19.)  Plaintiff "points to no independent, non-negotiable state standard by which we can judge the defendants' conduct," at least insofar as the defamation claim is presented in relation to the terms of the CBA.  Hyles, 849 F.2d at 1216.

Accordingly, the Court concludes that "[b]ecause the CBA, rather than a nonnegotiable state law standard, defines [Winco Holdings'] authority and [Warren's] rights with regard to the conduct complained of, [Warren's] claims are not independent of the CBA."  Hyles, 849 F.2d at 1216; see also Shane, 868 F.2d at 1063; Lee, 2016 WL 8711500, at *4; Torres, 2022 WL 2116339, at *7; Kirton, 982 F. Supp. at 1389.  The Court finds Plaintiff's motion to remand should be denied because Plaintiff's eighth cause of action for defamation is preempted by

1   Section 301 of the Labor Management Relations Act.

2   　　　While the Court finds Plaintiff's motion is properly be denied on this basis, the Court shall

3   also now consider Defendants' alternative argument concerning diversity jurisdiction and that

4   Lamb is a "sham" or fraudulently joined defendant.  For the reasons explained below, the Court

5   rejects Defendants' arguments that Lamb is a fraudulent joined defendant, and thus does not offer

6   an  independent basis to deny Plaintiff's motion.

7   　　　　4.　　　Diversity Jurisdiction and Fraudulent Joinder Analysis

8   　　　Plaintiff is a citizen of California.  The initially filed complaint did not have complete

9   diversity between the parties because it named WinCo Foods, and Lamb, citizens of California.

10   With the filing of the FAC, Defendants submit that complete diversity now exists as new

11   Defendant WinCo Holdings is a citizen of Idaho, WinCo Foods is no longer a Defendant, and

12   because Defendant Lamb, a citizen of California, is a "sham" or fraudulent defendant.

13   Defendants contend this provides an additional basis to deny Plaintiff's motion to remand.[8]  The

14   Court disagrees.  Although not determinative of the motion given the finding of preemption in the

15   preceding section, the Court finds Defendants have not met their high burden to demonstrate

16   fraudulent joinder.

17   　　　Preliminarily, Defendants address potential issues of timeliness of removal on diversity

18   grounds.  (Opp'n 13 n.3.)  Pursuant to 28 U.S.C. § 1446(b)(3), "if the case stated by the initial

19   pleading is not removable, a notice of removal may be filed within 30 days after receipt by the

20   defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other

21   paper from which it may first be ascertained that the case is one which is or has become

22   removable."  28 U.S.C. § 1446(b)(3).  Defendants contend that because WinCo Holdings was first

23   provided with the FAC on May 27, 2022, removal on diversity grounds is timely; and that given a

24   notice of removal was already filed by WinCo Foods and Lamb, "it makes no sense" to file

25   another notice of removal, and rather, removal for diversity can be addressed through resolution

26   of the pending motion to remand.  (Opp'n 13 n.3)

27

28   [8]  As for the amount in controversy, Plaintiff does not appear to dispute the Defendants' arguments concerning the
amount in controversy exceeding $75,000.  (See Opp'n 17-21; Reply generally.)

In briefing, Plaintiff did not directly address this contention or proffer the Court could not consider the FAC as the operative complaint and adjudicate the merits of removal based on diversity based on the FAC.  In reply, Plaintiff did state the notice of removal did not mention diversity jurisdiction.  The majority of Plaintiff's reply briefing does substantively address the Defendants' arguments concerning diversity jurisdiction.  At the hearing, Plaintiff did suggest that adjudicating diversity jurisdiction as only first raised in an opposition to a motion to remand could create issues compared to if it was first raised in a notice of removal or a motion to dismiss.  Nonetheless, at the hearing, Plaintiff agreed the issues were sufficiently developed and agreed to allow the Court to consider the merits of the diversity sham analysis as to the FAC.  In either regard, the Court finds in favor of Plaintiff as to this sub-issue based on the applicable legal standards, the current posture of the case, the allegations in the complaint, and the arguments presented.[9]

### a. WinCo Holdings is a Citizen of Idaho

Defendants submit that WinCo Holdings is incorporated under the laws of the State of Idaho, and has its principal place of business in Idaho.  Plaintiff does not dispute this contention, and the Court finds the position supported.

Specifically, the Court finds WinCo Holdings' "nerve center" is located in Idaho, as its corporate headquarter is located exclusively in the state, and all of its executive and administrative functions take place in Idaho.  (Opp'n 14.)  The Court thus finds WinCo Holdings' principal place of business is Idaho.  See Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010) ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the 'nerve center,' and not simply an office where the corporation holds its board meetings.").  Accordingly, the Court finds WinCo Holdings to be a citizen of Idaho.  28 U.S.C. § 1332(c)(1) ("a corporation

---

[9]  Although not determinative, finding diversity jurisdiction would impact the need for a supplemental jurisdiction analysis, though neither of the parties presented any arguments as to exercising supplemental jurisdiction.

1    shall be deemed to be a citizen of every State and foreign state by which it has been incorporated

2    and of the State or foreign state where it has its principal place of business").

3          **b.**      **General Legal Standards Applicable to Fraudulent Joinder Analysis**

4          An exception to complete diversity exists where there is a fraudulently joined or "sham"

5    non-diverse defendant.   Hunter v. Philip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009)

6    (internal quotation marks omitted) (quoting Morris, 236 F.3d at 1068); Narayan v. Compass Grp.

7    USA, Inc., 284 F. Supp. 3d 1076, 1084 (E.D. Cal. 2018); Ritchey v. Upjohn Drug Co., 139 F.3d

8    1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not

9    defeat removal on diversity grounds.").   Joinder is fraudulent and a sham to defeat diversity

10   jurisdiction if "the plaintiff fails to state a cause of action against a resident defendant, and the

11   failure is obvious according to the settled rules of the state."   Hunter, 582 F.3d at 1043 (quoting

12   Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007)); Morris, 236

13   F.3d at 1068 ("Such an allegation fails to state a claim for negligent misrepresentation against

14   Consultants and the failure is obvious according to settled law . . . Consultants's joinder as a

15   defendant in this action was correctly ignored by the district court and removal was proper based

16   on diversity of citizenship."); Narayan, 284 F. Supp. 3d at 1084 (same).

17         "The defendant seeking removal to the federal court is entitled to present the facts

18   showing the joinder to be fraudulent."   McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th

19   Cir. 1987).[10]   However, there is a general presumption against finding fraudulent joinder, and it is

20   a defendant's burden to prove fraudulent joinder by clear and convincing evidence.   Narayan, 284

21   F. Supp. 3d at 1084 (citing Hamilton, 494 F.3d at 1206).   A defendant's simple allegation that a

22   plaintiff has not pled sufficient facts to state a claim is not enough to establish fraudulent joinder

23   if the plaintiff can potentially amend the complaint to allege a viable claim.   Narayan, 284 F.

24   Supp. 3d at 1084 (citing Birkhead v. Parker, No. C 12-2264 CW, 2012 WL 4902695, at *3 (N.D.

25   Cal. Oct. 15, 2012) ("Defendants cannot establish that Plaintiff would not be able to amend the

26   complaint to allege any viable claim against Parker under California law.")).   "Nonetheless, if it is

---

27   [10]   As noted above, courts can look beyond the pleadings when analyzing both complete preemption, and fraudulent
28   joinder.   See Morris, 236 F.3d at 1068; Hawaii ex rel. Louie, 761 F.3d at 1034; Nava, 2019 WL 3526342, at *2;
Ritchey, 139 F.3d at 1318 ("Where fraudulent joinder is an issue, we will go somewhat further.").

clear under state law that under no circumstance identified by a plaintiff could a viable claim be made against the defendant alleged to have been fraudulently joined, dismissal can still be appropriate." Narayan, 284 F. Supp. 3d at 1084 (citing Good v. Prudential Ins. Co. of Am., 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("[D]efendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant.").

If "there exists 'a non-fanciful possibility' that Plaintiff can state a claim under California law against the non-diverse defendant," there is no "sham" defendant, and the Court must remand. Hernandez v. Ignite Rest. Grp., Inc., 917 F. Supp. 2d 1086, 1091–92 (E.D. Cal. 2013) (quoting Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002)); see also Nasrawi v. Buck Consultants, LLC, 776 F. Supp. 2d 1166, 1175–76 (E.D. Cal. 2011) ("Defendants cannot demonstrate, by clear and convincing evidence, that there is no possibility that Plaintiffs can state a claim.").   In other words, "[i]n the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." Nasrawi, 776 F. Supp. 2d at 1169–70.

### c.    The Court Finds Defendants have not Demonstrated Fraudulent Joinder

Defendants contend Plaintiff only makes conclusory allegations that Lamb's statements were made with "malice," directing the Court to paragraph 74 of the complaint.  (Opp'n 7-8.)  Defendants do not reproduce the full excerpt.  (Id.)  This paragraph reads in full: "Defendants published and republished the defamatory statements knowing the statements to be false, defamatory and untrue and made the defamatory statements with animus, hatred, ill will and an intent to vex, harass annoy and injure Plaintiff and with the fraudulent and malicious purpose and design of injuring the reputation and the professional and economic interests of Plaintiff, thereby warranting the imposition of punitive damages."  (Id. at ¶ 74.)  The next paragraph of the complaint alleges: "Alternatively, Defendants published the defamatory statements without regard for their truth or falsity and without any reasonable investigation into their truth or falsity,

and with a conscious and deliberate disregard for the rights of Plaintiff, thereby warranting the imposition of punitive damages."  (Id. at ¶ 75.)

The eighth cause of action incorporates the factual allegations from preceding paragraphs.  (FAC ¶ 66.)  Plaintiff also generally alleges Lamb made false statements about her to WinCo Holdings that the false statements made by Lamb were to the effect that Plaintiff had unprotected absences in violation of company policy and the collective bargaining agreement which implied that she was a poor and unreliable employee who deserved to be terminated; and that Lamb's statements were not true as Plaintiff's absences were protected, she did not violate company policy or the collective bargaining agreement, and did not deserve to be fired.  (FAC ¶ 19.)

i.   Consideration of the Parties' Principal Arguments

The Court now turns to consider the parties' specific arguments.[11]

---

[11]  The Court preliminarily notes some of Plaintiff's arguments in reply before proceeding into the more critical issues for adjudication.  One argument proffered by Plaintiff is that because "Counsel for Plaintiff filed several lawsuits in federal court, including several that included defamation causes of actions against individual defendants . . . the Court can reasonably conclude that Plaintiff and her counsel would not fraudulently join a defendant in order to avoid federal court jurisdiction."  (Reply at 8.)  Defendants highlight that fraudulent joinder does not require intent on the behalf of the plaintiff naming the party.  See McCabe, 811 F.2d at 1339 ("Fraudulent joinder is a term of art.").  The Court does not find nor need to find intent to frequently join a defendant in order to avoid federal court jurisdiction.  Good, 5 F. Supp. 2d at 807 ("The defendant need not show that the joinder of the non-diverse party was for the purpose of preventing removal.").

Additionally, the Court essentially accepts Plaintiff's first and second arguments made in reply briefing as not in dispute for purposes of the malice analysis.  First, Plaintiff argues that statements damaging to professional reputation are damaging per se.  See Cal. Civ. Code § 46(3) ("Slander is a false and unprivileged publication . . . which . . . [t]ends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits."); Washer v. Bank of Am. Nat. Tr. & Sav. Ass'n, 21 Cal. 2d 822, 827 (1943); Cameron v. Wernick, 251 Cal. App. 2d 890, 893, 60 Cal. Rptr. 102 (Ct. App. 1967).  Plaintiff directs the Court to Jensen, for the proposition that it held a performance review can be defamatory.  See Jensen v. Hewlett-Packard Co., 14 Cal. App. 4th 958, 965 (1993) ("Based on the facts here, we hold that unless an employer's performance evaluation falsely accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal characteristics or behavior [citation] it cannot support a cause of action for libel.").  Plaintiff provides other case law from California arguing they are examples of defamatory work criticism.  (Reply 3, citing Rodriguez v. N. Am. Aviation, Inc., 252 Cal. App. 2d 889, 894 (Ct. App. 1967); Agarwal v. Johnson, 25 Cal. 3d 932, 944-45 (1979); Washer, 21 Cal. 2d at 825-28; Biggins v. Hanson, 252 Cal. App. 2d 16, 19-20 (Ct. App. 1967).  Plaintiff argues the complaint here alleges statements very similar to those in these cases, and emphasize no opportunity for discovery has yet occurred, and Defendants will have to disclose what they said and wrote about Plaintiff, and there is no way to analyze these statements now.  (Reply 4.)  Second, Plaintiff argues Defendants cannot meet their burden to prove truth without litigating this case, emphasizing the burden of proof with respect to the truth or falsity of a defamatory statement is on a defendant, and the only way to resolve is with discovery and further litigation.  (Reply 4.)  The Court need not rest on Plaintiff's first or second arguments or the cases cited for such arguments, as the Court finds the issue of whether the statements can be considered defamatory is not truly in dispute for the Court's role here.  Rather, the analysis turns on the question of malice, given the communication must be unprivileged.  Cal. Civ. Code § 46(3) ("Slander is a false and unprivileged publication") (emphasis added); Cal. Civ. Code § 47(c) (common interest privilege applies unless

Defendants submit the common interest privilege of California Civil Code § 47 applies to Lamb, and proffer courts have applied this privilege to alleged defamatory communications of the precise nature that are alleged here (Opp'n 15-16).  See McGrory v. Applied Signal Tech., Inc., 212 Cal. App. 4th 1510, 1538 (2013) (the common-interest privilege applies "to statements by management and coworkers to other coworkers explaining why an employer disciplined an employee."); Arnaud v. Little Caesar Enterprises, Inc., 2018 WL 4772274, at *5 (C.D. Cal. 2018) ("an alleged defamatory statement concerning Arnaud's job performance by a human resources employee clearly falls within the statutory privilege."); Narayan, 284 F. Supp. 3d at 1086 (the common-interest privilege applied because the communications took place between fellow managers who had a common business interest in plaintiff's termination); King v. United Parcel Serv., Inc., 152 Cal. App. 4th 426, 440 (2007) (holding that the employer's statements to other employees that the plaintiff had been fired for violating the time card policy were protected under common-interest privilege).

The McGrory court's full statement reads, "[t]his common interest privilege is not well-defined, but it has been determined to apply to statements by management and coworkers to other coworkers explaining why an employer disciplined an employee."  McGrory, 212 Cal. App. 4th at 1538.  The case cited for this proposition, in McGrory, noted: "[c]learly, an employer is privileged in pursuing its own economic interests and that of its employees to ascertain whether an employee has breached his responsibilities of employment and if so, to communicate, in good faith, that fact to others within its employ so that (1) appropriate action may be taken against the employee; (2) the danger of such breaches occurring in the future may be minimized; and (3) present employees may not develop misconceptions that affect their employment with respect to

---

malice).

Finally, Plaintiff also argues that Defendants cannot show fraudulent joinder because Plaintiff's counsel has alleged workplace defamation claims many times in employment discrimination claims in the past fifteen years; her and her firm have recovered substantial sums for their clients, including a jury verdict for almost half a million dollars; the allegations in the case with the jury verdict were very similar to the allegations in the present complaint; and Plaintiff states these defamation claims are "seldom lost on summary judgment."  (Decl. Amanda B. Whitten Supp. Mot. Remand ("Whitten Decl.") ¶ 3-4, ECF No. 7 at 9-10.)  The Court also finds this fact to be unnecessary to consider for the malice analysis.

certain conduct that was undertaken in the past."  Deaile v. Gen. Tel. Co. of California, 40 Cal. App. 3d 841, 849 (Ct. App. 1974).  In Arnaud, the court's statement that "an alleged defamatory statement concerning Arnaud's job performance by a human resources employee clearly falls within the statutory privilege," is preceded by the qualified statement that: "[t]he Court finds that several of the alleged defamatory statements clearly relate to the CCAR and would be subject to the common interest privilege *absent a showing of actual malice*."  Arnaud, 2018 WL 4772274, at \*5 (emphasis added).  Thus, Arnaud recognized the privilege would not apply if there is a showing of actual malice.  Id.

This is consistent with the California Civil Code.  Under California law, the common interest privilege applies to: "a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."  Cal. Civ. Code § 47(c). Section 47(c) codifies the common law privilege of common interest, that "protected communications made in good faith on a subject in which the speaker and hearer shared an interest or duty."  Narayan, 284 F. Supp. 3d at 1086 (quoting Kashian v. Harriman, 98 Cal. App. 4th 892, 914 (2002)).

The defendant generally bears the burden of establishing the alleged defamatory statement is privileged, and thereafter the burden shifts to the plaintiff to establish the statement was made with malice.  Narayan, 284 F. Supp. 3d at 1086 (citing Taus v. Loftus, 40 Cal. 4th 683, 721 (2007)).  "For the purposes of Civil Code section 47(c), malice means 'a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person.' " Narayan, 284 F. Supp. 3d at 1086 (quoting Brown v. Kelly Broad. Co., 48 Cal. 3d 711, 723 (1989)).  If Plaintiff is able to prove that malice exists, "the privilege does not exist."  Id.

Aside from malice, Plaintiff does not appear to dispute the other aspects of Section 47c) are met.  See Narayan, 284 F. Supp. 3d at 1086 ("Plaintiff does not appear to contest that Berger is an interested person . . . as Legault points out, communications between an employer and employees concerning the reasons for terminating another employee may be privileged [and] [a]

common business or professional interest will suffice . . . [and] [a]ccordingly, Legault and Berger were interested parties for the purposes of determining whether the conditional privilege defense applies because both were managers for Compass."); see also King, 152 Cal. App. 4th at 440 ("Plaintiff acknowledges that because an employer and its employees have a common interest in protecting the workplace from abuse, an employer's statements to employees regarding the reasons for termination of another employee generally are privileged.").  Plaintiff generally rests on the arguments that Defendants cannot establish the absence of malice, and Plaintiffs can prove malice in many manners (Reply at 5-6).

Turning back to the cases cited by Defendant, the discussion in King is instructive, however, the court's decision there followed determinations made at the summary adjudication stage:

> He maintains, however, that UPS lost its "common interest" privilege by terminating him with malice. [citation] His argument is but a reformulation of the same evidence we concluded did not raise genuine triable issues that the discharge was either pretextual or in bad faith. If the discharge was neither pretextual nor in bad faith, it certainly was not malicious.
>
> The trial court granted summary adjudication of plaintiff's defamation claim because the alleged statements were privileged. Section 47 of the Civil Code states, in pertinent part: "A privileged publication ... is one made: [¶] ... [¶] (c) [i]n a communication, without malice, to a person interested therein...." Parties in a business or contractual relationship have the requisite "common interest" for the privilege to apply. [citations[
>
> In an analogous case, an employer discharged a truck driver for allegedly falsifying his timecard and driver's log. [citation] The federal district court explained its rejection of the employee's defamation claim this way: "... Fisher alleges that employees were the recipients of the alleged defamatory remarks. Lucky had an interest in communicating the reason for Fisher's termination to the employees; it wanted employees to be aware of the penalties for falsifying time records. Fisher points to no evidence of actual malice or excessive publication. Any statements made regarding the reasons for Fisher's termination furthered the interest of both Lucky and the employees; the alleged defamatory statements made to employees are, accordingly, privileged." [citations]

King, 152 Cal. 4th at 440–42 2 ("He has not unveiled the quantum of evidence necessary to create a triable issue that UPS decision makers acted with the requisite malice to sustain a defamation claim.").

Defendants emphasize it is Plaintiff's burden to specifically plead malice to overcome the privilege. See Robomatic, Inc., v. Vetco Offshore, 225 Cal. App. 3d 270, 275–76 (Ct. App. 1990) ("To defeat this conditional privilege, a plaintiff must specifically allege malice . . . A general allegation of malice will not suffice; plaintiff must allege detailed facts showing defendant's ill will towards him.") (citations omitted).  However, the plaintiff in Robomatic *was* granted leave to amend and failed to cure the defect by failing to specifically allege facts demonstrating malice. Id. ("Since Rehka did not specifically allege malice, although given the opportunity to amend, judgment on the pleadings was properly granted.").

Defendants argue Plaintiff has not alleged sufficient detailed facts of malice, that her allegations are purely conclusory (FAC ¶ 74), and that such defect cannot be cured through amendment.  See Narayan, 284 F. Supp. 3d at 1092 ("Although generally leave to amend would be 'freely given,' to do so here would imply that Plaintiff could state a viable defamation claim, and the Court has already concluded he cannot.").  However, the plaintiff in Narayan was afforded *multiple* opportunities to amend but failed to do so.  Id. ("Moreover, Plaintiff has had multiple opportunities to amend his complaint but has failed to do so, and this Court is thus convinced that amendment would be futile.").  Nonetheless, Defendants emphasize the Court to consider the similarities between the case here and the plaintiff in Narayan.[12]

---

[12]  At the hearing on this motion, Defendants' counsel emphasized Narayan demonstrated the appropriateness of performing a "sham" defendant or fraudulent joinder analysis when adjudicating a motion to remand where diversity was only raised in the opposition, instead of a motion to dismiss.  In Narayan, not only was the plaintiff previously granted an opportunity to amend to cure defects, the adjudication of the motion to remand was concurrent with the adjudication of a motion to dismiss.  See Narayan, 284 F. Supp. 3d at 1080–81 ("There are currently two matters before the Court.  First, Plaintiff moves for remand . . . Second, Legault moves to dismiss Plaintiff's Ninth Cause of Action, for defamation, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Legault asserts that since Plaintiff has failed to state a viable claim for defamation, and because defamation is the only cause of action asserted against Legault, he should be dismissed entirely as a defendant to this lawsuit.").  Although the Narayan court found both the motion to remand and motion to dismiss turned on the question of the viability of the defamation claim, the analysis was still subject to the possibility standard for fraudulent joinder, not only the plausibility Rule 8 standard for a motion to dismiss (with motions to dismiss also entailing a discussion of leave to amend):

> Although a defendant must show that there is virtually no chance that the plaintiff can state a
> viable claim in order to invoke fraudulent removal, that assessment must still be based largely on
> the allegations of the plaintiff's complaint.  Removability is therefore generally determined by the
> "four corners of the applicable pleadings, not through the subjective knowledge or a duty to make
> further inquiry." Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005). Diversity
> jurisdiction should consequently be analyzed at the time the complaint is filed and removal is
> effectuated. Strotek Corp. v. Air Transp., Ass'n of Am., 300 F.3d 1129, 1131 (9th Cir. 2002); Toth
> v. Guardian Indus. Corp., 2012 WL 468244 at *5 (E.D. Cal. Feb. 13, 2013) ("the weight of

Narayan sued his former employer alleging claims for disability discrimination, failure to accommodate disability, failure to engage in the interactive process, violation of CFRA, wrongful termination, and like here, "assert[ed] a claim for defamation against his manager at Compass." Narayan, 284 F. Supp. 3d at 1080.  Narayan alleged the manager defamed him in a meeting in which the manager stated Narayan was unable to perform the essential functions of his job and therefore was being terminated.  Id. at 1081.  Although Narayan protested that he had been performing the job's essential functions for an extended period and asked the manager to investigate to confirm, the manager declined to do so and indicated the termination decision was final and effective immediately.  Id.  After removal, in considering a motion to remand, the court found the manager was a "sham" defendant because the common interest privilege applied. Although Narayan argued that the manager's refusal to investigate supported a finding of malice, the court disagreed, and concluded that "there is no possibility that Plaintiff can state a viable or non-fanciful defamation claim."  Id. at 1089.  Defendants argue the same is true here, in that Plaintiff has not alleged detailed facts to support any assertion that Lamb's statements about "unprotected absences" justifying Plaintiff's termination were made with malice, and nor can she as such allegations would be implausible.  (Opp'n 16-17.)

As noted above, the Court did not find Plaintiff's first and second general arguments as to defamation critical to the malice analysis, as the Court found the issue of whether the statements can be considered defamatory is not truly in dispute for the Court's role here, and that rather, the

---

authority holds that review of the complaint, even in fraudulent joinder cases, is constrained to the facts actually alleged therein"). Since Plaintiff's only claim against Legault is the Ninth Cause of Action for Defamation, Legault now bears the burden of showing, with all state law ambiguities resolved against him, that there is no possibility that Plaintiff can state a such a claim or that the possibility he could is fanciful. Accordingly, both Plaintiff's Motion to Remand and Legault's Motion to Dismiss turn on whether Plaintiff has stated a viable defamation claim. If Plaintiff has not, and the elements of diversity jurisdiction are otherwise satisfied, then granting the Motion to Dismiss, denying the Motion to Remand, and ultimately maintaining jurisdiction over this case is proper.

Narayan, 284 F. Supp. 3d at 1084–85. While the parties agreed to allow the Court to consider the arguments as to fraudulent joinder, the only noticed motion before the Court is still only the motion to remand, not a motion to remand and motion to dismiss under Rule 12, which was in fact the posture in Narayan, despite Defendants' proffer at the hearing.  It appears the Narayan court essentially analyzed the motions together in that if fraudulent joinder was demonstrated under the possibility/fanciful standard, the motion to dismiss would also be appropriately granted without leave to amend.  See also

analysis turns on the question of malice, given the communication must be unprivileged.  Cal. Civ. Code § 46(3) ("Slander is a false and *unprivileged* publication") (emphasis added); Cal. Civ. Code § 47(c) (common interest privilege applies unless malice).  This enters into Plaintiff's next argument, that internal publications by an employer's agents are only subject to the *conditional* privilege.  (Reply 4, citing Biggins, 252 Cal. App. 2d at 19 (employee defamed by an immediate supervisors' publication to the personnel manager); and Cruey v. Gannett Co., 64 Cal. App. 4th 356, 369 (1998) (defamation claim where plaintiff's subordinate published accusations of "sexual harassment and other improprieties" to the human resources department).  Plaintiff proffers, "[s]imply stated," Defendants are not entitled to the Section 47(c) conditional privilege if "it is abused" or the publication was motivated by malice (Reply 5).  See Cruey, 64 Cal. App. 4th at 369 ("We conclude that complaints to employers about workplace harassment should be privileged.  To hold otherwise would have a chilling effect on an employee's right to be free from sexual harassment or discrimination in the workplace by exposing the employee to the risk of litigation as a consequence to seeking enforcement of this right.  However, none of Lacy's authority stand for the proposition that a complaint to a private employer, even if made through the proper channels, is absolutely privileged.  At best, it is conditionally privileged subject to a finding of malice.").  The Court and Defendants recognize malice is an exception to the conditional privilege.

Plaintiff submits the language of Section 47(c) places the burden on Defendants to provide the statements were made without malice, and argues Defendants cannot meet that burden here without litigating the case, and Plaintiff will have no problem establishing malice with evidence through discovery.  (Reply 5.)  Plaintiff submits that she can prove malice in many ways, and provides the Court with a number of California state law cases concerning findings of malice, and argues establishing malice in the defamation context is not onerous, unlike in the context of punitive damages.  (Reply 6.)

For example, Plaintiff argues she only need show that a defendant lacked reasonable grounds for belief in the trust of the publication and therefore acted in reckless disregard of the Plaintiff's rights.  See Sanborn v. Chron. Pub. Co., 18 Cal. 3d 406, 413 (1976) ("The malice

necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.") (citations omitted).

Plaintiff emphasizes the question of malice is for the jury.  See McMann v. Wadler, 189 Cal. App. 2d 124, 129 (Ct. App. 1961) ("The existence or nonexistence of malice is a question of fact for the jury and the evidence of prior defamation of similar import in this case was sufficient to justify submission of the question to the jury.").   However, that statement in of itself acknowledges and contemplates that such question should not always be presented to a jury (i.e. summary judgment).   Nonetheless, the Court recognizes the question is generally for the jury, and recognizes the heightened standards for finding fraudulent joinder when adjudicating a motion to remand, as discussed below.

Plaintiff proffers she can prove malice by showing Defendants failed to investigate and verify the facts of the alleged defamatory statement.  See Rollenhagen v. City of Orange, 116 Cal. App. 3d 414, 423 (Ct. App. 1981) ("Plaintiff relies on . . . a line of cases cited therein for the proposition that failure to investigate thoroughly and verify facts equates with bad faith or malice[,] [that] really tells us, however, that a lack of inquiry and investigation *may* supply the sufficient inference of lack of good faith or negligence sufficient to supply the element of malice.") (emphasis in original); Widener v. Pac. Gas & Elec. Co., 75 Cal. App. 3d 415, 434-35 (Ct. App. 1977) ("[T]he investigation must be more thorough, and actual malice may be inferred when the investigation . . . was grossly inadequate in the circumstances . . . [a]n independent review of the evidence reveals ample evidence from which the jury might infer that respondent PG&E acted with reckless indifference to the truth or falsity of the serious charge it made against Widener.   There was no 'hot news' element here.") (internal citations and quotation marks omitted).   Thus, a failure to investigate *may* be part of the facts that are part of a finding of malice.

Plaintiff proffers she can show malice by a purposeful avoidance of truth, or inaction, and averring to a failure to investigate.   However, again, as stated in the case cited by Plaintiff,

"[a]lthough failure to investigate will not alone support a finding of actual malice . . . the purposeful avoidance of the truth is in a different category." Antonovich v. Superior Ct., 234 Cal. App. 3d 1041, 1048 (Ct. App. 1991) (quoting Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 692 (1989)).  Thus, inaction, "i.e., failure to investigate, which 'was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the subject] charges' will support a finding of actual malice." Id. (alteration in original).

Plaintiff argues she can show malice by demonstrating a failure to consult witnesses in a summary termination.  See Toney v. State of California, 54 Cal. App. 3d 779, 794 (Ct. App. 1976) ("Looking at the evidence most favorable to Toney, it cannot be said that it was insufficient to support the implied finding of the jury that the press release was issued with actual malice. Such an inference could be legitimately drawn from the summary suspension of Toney by President Falk without consulting with any of the vast number of available witnesses other than Walker and by calling a press conference to announce the so-called unprofessional and criminal conduct of Toney.").

Plaintiff emphasizes she can show malice by showing the person making the statements knew of the falsity.  See Boyich v. Howell, 221 Cal. App. 2d 801, 803 (Ct. App. 1963) ("[P]leading that defendants published the article with knowledge of its falsity does adequately allege actual malice.")  And taking the language of the statute, Plaintiff also proffers malice for the purpose of showing an abuse of the conditional privilege only requires a showing of a state of mind arising from hatred or ill will evidencing a willingness to vex, harass, annoy, or injure.  See Agarwal v. Johnson, 25 Cal. 3d 932, 944–45 (1979) ("The malice referred to by the statute is actual malice or malice in fact, that is, a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person . . . [t]he factual issue is whether the publication was so motivated [and] the privilege is lost if the publication is motivated by hatred or ill will toward plaintiff[,] . . . or by any cause other than the desire to protect the interest for the protection of which the privilege is given.") (citations omitted); Burnett v. Nat'l Enquirer, Inc., 144 Cal. App. 3d 991, 1009 (Ct. App. 1983) ("the definition of malice in fact is not controlled by *New York Times* or its progeny, but is instead that articulated in *Davis v. Hearst*,

namely, the motive and willingness to vex, harass, annoy, or injure  or the *malus animus*—indicating that the party was actuated either by spite or ill-will towards an individual, or by indirect or improper motives, though these may be wholly unconnected with any uncharitable feeling towards anybody.") (internal quotation marks and citations omitted).

ii.     The Court Declines to Find Fraudulent Joinder

Ultimately, at this stage of the pleadings, not only would the Court find it inappropriate to find a fraudulent joinder given there has been no pointed opportunity to amend the complaint to address the argued lack of factual details concerning malice, the Court concludes Plaintiff's complaint indeed does plead sufficient factual allegations demonstrating malice sufficient to potentially dispose of the conditional privilege, or it is at least possible to do so if granted leave to amend.

The Court is swayed by the heightened standards for demonstrating fraudulent joinder and the general presumption against fraudulent joinder.  See Hunter, 582 F.3d at 1046 (there is general presumption against fraudulent joinder).  Indeed, "Ninth Circuit law is clear: a federal court is to find fraudulent joinder only under highly limited circumstances, and resolve any doubts in favor of remanding the action to state court." Bowles v. Constellation Brands, Inc., 444 F. Supp. 3d 1161, 1180–81 (E.D. Cal. 2020) (quoting Heit v. Monsanto Co., No. 2:18-CV-01849 BJR, 2019 WL 549499, at *5 (W.D. Wash. Feb. 12, 2019)); Garcha, 2019 WL 2464489, at *4 (in determining fraudulent joinder, court resolves all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party); Harris v. Walmart Inc., No. 2:22-CV-02540-SB-PLA, 2022 WL 2132588, at *3 (C.D. Cal. June 13, 2022) ("Given the heavy burden on Walmart to establish fraudulent joinder, the presumption against such a finding, and the principle that any uncertainty must be resolved in favor of remand, the Court cannot find that Batarseh was improperly joined.") Seanez v. Union Pac. R.R. Co., No. 121CV00553AWIHBK, 2021 WL 2379731, at *6 (E.D. Cal. June 10, 2021) (defendant "failed to meet its 'heavy burden' of establishing diversity jurisdiction through fraudulent joinder."); Porter v. Delta Airlines, No. CV 22-24 MRW, 2022 WL 1747336, at *2 (C.D. Cal. May 31, 2022) ("Additionally, there is a "general presumption against [finding] fraudulent joinder.").   "When diversity jurisdiction is

invoked based on fraudulent joinder, the Ninth Circuit has held, 'if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court *must* find that the joinder was proper and remand.' " Bowles, 444 F. Supp. 3d at 1179 (quoting Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 548 (9th Cir. 2018)).

Relatedly, the Court is swayed by the posture of this analysis on a motion to remand, instead of a motion to dismiss, particularly where there has not been an opportunity to amend in the face of a fully briefed motion to dismiss on such issues. See Garcha, 2019 WL 2464489, at *4-5 ("Thus, although the Court takes no position on whether plaintiff has pleaded sufficient facts to successfully state a claim for relief against Gauthier, it is at least *possible* that plaintiff *may* be able to state such a claim, either based on the complaint as pleaded or if granted leave to amend . . . the Court finds that defendants have failed to meet their burden to show that Gauthier was fraudulently joined."); Bowles v. Constellation Brands, Inc., 444 F. Supp. 3d 1161, 1179 (E.D. Cal. 2020) ("[D]efendants conflate their burden to establish an insufficiently pled claim under Rule 12(b)(6) with the impossibility standard of the fraudulent joinder doctrine and, in doing so, have failed to address how it is impossible for plaintiff to cure the pleading deficiencies identified above . . . Nonetheless, the court must consider this issue."); Sanchez v. Lane Bryant, Inc., 123 F. Supp. 3d 1238, 1244 (C.D. Cal. 2015) (rejecting reliance "a case in which the court found that the plaintiff had failed to plead sufficient facts rebutting the qualified privilege [finding case] inapposite because [that] court addressed the plaintiff's pleadings in the context of a motion to dismiss, as opposed to the more stringent standard for fraudulent joinder . . . at this juncture, plaintiff's burden is not to rebut the privilege, but rather merely to raise the possibility that she may be able to rebut that privilege in state court . . . [a]s stated above, the Court finds that plaintiff has alleged sufficient facts to plead malice in the fraudulent joinder context." (citing Kacludis v. GTE Sprint Communications Corp., 806 F.Supp. 866, 872 (N.D.Cal.1992))); Narayan, 284 F. Supp. 3d at 1080–81 ("There are currently two matters before the Court. First, Plaintiff moves for remand . . . Second, Legault moves to dismiss Plaintiff's Ninth Cause of Action, for defamation, pursuant to Rule 12(b)(6).").

"The issue of malice is a question of fact to be decided by the jury." Sanchez, 123 F. Supp. 3d at 1244 (citing Greenly v. Sara Lee Corp., 2008 WL 1925230, at *9 (E.D.Cal. Apr. 30, 2008)).  The Court concludes Plaintiff's complaint indeed does plead sufficient factual allegations demonstrating malice sufficient to potentially dispose of the conditional privilege, or it is at least possible to do so if granted leave to amend.  Garcha, 2019 WL 2464489, at *4-5 ("[I]t is at least *possible* that plaintiff *may* be able to state such a claim, either based on the complaint as pleaded or if granted leave to amend."); SDV/ACCI, Inc. v. AT & T Corp., 522 F.3d 955, 962 (9th Cir. 2008) ("In addition, California courts have held that 'ordinarily the privilege is lost if defendant has no reasonable grounds for believing his statements to be true[,]' [and] [w]e hold that, contrary to the view of the district court, triable issues exist as to malice and good faith, so summary judgment on this issue was improper." (quoting Inst. of Athletic Motivation v. Univ. of Ill., 114 Cal.App.3d 1, 12 (1980))); Sanchez, 123 F. Supp. 3d at 1244 ("Accordingly, like the plaintiff in Johnson, here plaintiff has alleged that purportedly defamatory statements were knowingly false and were made following a reckless investigation . . . Furthermore, a jury could find that Tse's alleged pattern of disparaging comments directed towards plaintiff supports at least an inference that Tse harbored ill will or hostility towards plaintiff when she made the allegedly defamatory statements.")[13]; Greenly, 2008 WL 1925230, at *9 ("Here, the court acknowledges that plaintiff has not succinctly supported his slander claim with an express accusation stating the term 'actual malice' . . .  [h]owever, actual malice may be shown by alleging that the defamatory statements were made with 'knowledge that it was false or with reckless disregard of whether it was false or not[,]' [and] . . . Plaintiff has averred that Mayberry knowingly made false accusations regarding plaintiff's professional conduct and competence that—when read in the light most favorable to plaintiff—may be sufficient to support an inferential finding that

---

[13]  The Court notes that the complaint allegations in Sanchez did contain more specific factual details to support the additional basis found by the court that a jury could find the disparaging remarks as an inference of ill will or hostility.  See Id. ("Finally, plaintiff alleges that on several occasions Tse made plaintiff 'feel guilty' for taking time off following medical procedures . . . Plaintiff also alleges that Tse made several disparaging comments about her age and that in general her 'trend' was not 'fresh enough' or young enough.")  The first basis of other allegations concerning falsity and the investigation are largely the same here.  See Id. ("Here, plaintiff alleges that the defamatory statements regarding her poor job performance were knowingly false . . . and that, to the contrary, she received awards and recognition for her performance . . . plaintiff alleges that the statements regarding her performance were made following an investigation that was "non-existent and at best reckless.").

Mayberry 'entertained toward [plaintiff] a feeling of hatred or ill will ... going beyond that which the occasion apparently justifies' and thus constituting actual malice . . . because a reasonable jury could find an inference of actual malice inherent in Mayberry's purported statements . . . the court will deny Mayberry's motion for summary judgment with respect to plaintiff's claim for defamation." (quoting McMann v. Wadler,  189 Cal.App.2d 124, 129 (1961) ("The existence or nonexistence of malice is a question of fact for the jury."))); Vazquez v. Target Corp., No. EDCV2200224JGBKKX, 2022 WL 1062060, at *4 (C.D. Cal. Apr. 8, 2022) (same) ("Section 47(c) is conditional and does not apply if Mr. Vazquez alleges the possibility of actual malice," and finding sufficient allegations that manager began giving Vazquez unwarranted criticism regarding his job performance after returning from long-term medical leave, that the manager sought to find reasons to terminate Vazquez's employment by asking co-workers to report any perceived misconduct on the part of Vazquez, and that the manager made the purportedly false accusations to Mr. Vazquez and reported him to human resources, and Mr. Vazquez was terminated—all in the same day.).

Here, Defendants have not provided a clear or convincing argument as to why Plaintiff should or would not be afforded an opportunity to plead additional facts regarding malice, aside from generally proffering it is implausible that Plaintiff could plead sufficient facts.  See Kyle v. Envoy Mortg., LLC, No. 18-CV-2396-BAS-WVG, 2018 WL 6600105, at *6 (S.D. Cal. Dec. 17, 2018) ("Envoy does not attempt to actually argue—as opposed to merely assert—that Kyle could not amend her defamation and unauthorized use of image claims to correct the deficiencies Envoy believes exist[,] [and] [i]n the absence of such an analysis from Envoy, the Court will not conclude that Envoy has met its burden to show that there is no possibility Kyle could plead sufficient facts.").

Based on the current allegations as presented for the defamation claim, the Court finds a non-fanciful possibility that Plaintiff could state or has stated a claim of malice sufficient to pierce the conditional privilege.  See Porter v. Delta Airlines, No. CV 22-24 MRW, 2022 WL 1747336, at *3 (C.D. Cal. May 31, 2022) (emphasis added) ("Plaintiff's original complaint made only minimal, glancing reference to Mr. Lingard and his alleged bad behavior toward Plaintiff . . .

1   But Plaintiff filed an amended complaint that provided additional details about her grievance . . .

2   allegations include the somewhat-fishy facts that the HR employee: had access to Plaintiff's

3   medical claim records; sent important job-related information to a drug store 'drop location'

4   rather than to Plaintiff directly; imposed tight or unworkable deadlines for her response; and did

5   not reflect Plaintiff's interaction with other components of the airline or its outside contractor . . .

6   [and] [i]f proved, those additional allegations could, **with a favorable breeze and a downhill**

7   **slope**, conceivably lead a so-inclined jury to conclude that the HR guy acted in an outrageous

8   manner to get Plaintiff fired and cause her harm.  Put another way, I now agree that there's a non-

9   fanciful possibility that Plaintiff could state or has stated a claim against Mr. Lingard."); Bowles,

10  444 F. Supp. 3d at 1180–81 ("First, it is plaintiff's original complaint that is pending before the

11  court and plaintiff has sufficiently alleged the element of falsity in his defamation claim.  Thus, it

12  is difficult to rule out the possibility that plaintiff could cure the identified defects in his

13  complaint.  Of course, it is also common to grant a plaintiff leave to amend his original

14  complaint.  Although plaintiff fails to propose any new allegations that would cure the pleading

15  defects noted above, the existing allegations of the complaint—albeit conclusory—do not

16  foreclose that possibility."); Johnson v. Wells Fargo & Co., No. CV 14-06708 MMM JCX, 2014

17  WL 6475128, at *9 (C.D. Cal. Nov. 19, 2014) (emphasis added) (granting motion to remand

18  where statements were alleged to be knowingly false; made to retaliate for reporting person had

19  engaged in illegal conduct, so as to justify his termination; made following a reckless

20  investigation by defendants; and defendants were alleged to have caused excessive and

21  unsolicited publication to third persons, and finding [s]uch allegations are sufficient to plead

22  malice, *at least* for purposes of avoiding removal on the basis of fraudulent joinder."); Garcha,

23  2019 WL 2464489, at *3 ("Plaintiff has therefore *possibly* stated a claim for defamation to which

24  the common interest privilege does not apply . . . it is at least *possible* that plaintiff *may* be able to

25  state such a claim, either based on the complaint as pleaded or if granted leave to amend . . . the

26  Court finds that defendants have failed to meet their burden to show that Gauthier was

27  fraudulently joined" (citing Johnson, 2014 WL 6475128, at *9)).

28           In Narayan, in denying the motion to remand and granting the motion to dismiss, the court

stated: "[a]lthough generally leave to amend would be 'freely given,' to do so here would imply that Plaintiff could state a viable defamation claim, and the Court has already concluded he cannot [and] Plaintiff has had multiple opportunities to amend his complaint but has failed to do so, and this Court is thus convinced that amendment would be futile." Narayan, 284 F. Supp. 3d at 1092.  In Narayan, the multiple opportunities referenced were: (1) failing to "file an amended complaint in response to Defendants' Notice of Removal, which clearly delineated why the defamation claim against Legault as then constituted failed to state any viable cause of action," and failing to file  "an amended complaint in response to the instant Motion to Dismiss, which put Plaintiff on notice yet again as to the deficiencies of his defamation claim," and "[g]iven these failures, the Court concludes that Plaintiff is unable to further support his defamation claim through any amendment."  Narayan, 284 F. Supp. 3d at 1092 n.6.  Thus, the fact a motion to dismiss was adjudicated in Narayan concurrently with the motion to remand was an additional fact putting the plaintiff on notice of a possible need to amend as to malice, and a factor in finding amendment futile.

Like Narayan, and citing to Narayan, the Bowles court found the plaintiff had not pled sufficient facts alleging malice to defeat the conditional privilege, however, could not find amendment futile at that early stage of litigation:

> For instance, plaintiff alleges that the investigation into his conduct was fabricated and motivated by racial animus, and that thereafter defendant Putnam published—or plaintiff was coerced into publishing—false statements about plaintiff's termination with malice to third parties outside of the workplace who had "no need to know and who made no inquiry" about plaintiff's employment with defendants . . . If these overarching assertions are supported by additional and more detailed factual allegations, they may be sufficient to constitute a cognizable defamation claim and escape the reach of the common-interest privilege . . .
>
> The court therefore concludes at this early stage in the litigation that it is possible plaintiff may be able to cure the pleading defects identified by the court above. See GranCare, 889 F.3d at 549 (noting that the Ninth Circuit has "declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal"). The court also finds that defendants have failed to meet their heavy burden of establishing diversity jurisdiction through fraudulent joinder. [citations] . . .

Accordingly, for the reasons explained above, this case must be remanded to state court.

Bowles, 444 F. Supp. 3d at 1180–81.  Similarly here, if grounds for removal based on preemption did not exist due to the CBA being inextricably intertwined, as the Court previously found as a basis to deny the motion to remand, the Court would decline to find in favor of Defendants on their alternative grounds for removal of fraudulent joinder, and would be inclined to grant the Plaintiff's motion to remand.

Accordingly, for all of the above reasons, while not determinative of Plaintiff's motion to remand, the Court finds no fraudulent joinder and thus does not provide an additional alternative basis to deny Plaintiff's motion.

### C.    The Court finds Exercise of Supplemental Jurisdiction Appropriate

Neither party addressed the question of exercising supplemental jurisdiction over the remaining state causes of action that were not argued to be preempted by Section 301.  In the absence of arguments otherwise, the Court finds it appropriate to exercise supplemental jurisdiction here over Plaintiff's other state law causes of action.

"Claims preempted under § 301 are within a district court's original jurisdiction."  Saxe v. Cast & Crew Payroll, LLC, No. CV1501872SJOVBKX, 2015 WL 4648041, at *8 (C.D. Cal. Aug. 4, 2015) (citing Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557, 561–62 (1968); Scott, 827 F.2d at 591).  "If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 559 (2005).

"[I] is well established—in certain classes of cases—that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  Exxon Mobil, 545 U.S. at 552; see also Saxe, 2015 WL 4648041, at *8 ("[I]n order for this Court to have supplemental jurisdiction over Plaintiff's non-preempted FEHA claim, the FEHA claim must form part of the

1  same case or controversy as the claim preempted under § 301."); <u>Hernandez v. Pac. Mar.</u>

2  <u>Ass'n</u>, 379 Fed.Appx. 668, 671 (9th Cir.2010) ("Because the plaintiff's state law claims . . .

3  [were] preempted by section 301 of the LMRA, the district court had federal question jurisdiction

4  over at least some of the plaintiff's claims [and s]ubject matter jurisdiction over the balance of the

5  claims in the amended complaint was proper under 28 U.S.C. § 1367(a).").

6       Plaintiff brings her non-preempted claims as part of the same complaint as her preempted

7  claim; they arise from the same conduct on the part of her employer and manager; and therefore,

8  "Plaintiff's non-preempted claim under FEHA [and other state law claims] clearly fall within the

9  Court's supplemental jurisdiction, and the Court may not decline to exercise supplemental

10 jurisdiction over this claim unless it has a statutory basis for doing so." <u>Saxe</u>, 2015 WL 4648041,

11 at *8–9 (citation omitted).  The Court "may decline to exercise supplemental jurisdiction over a

12 claim under subsection (a) if-- (1) the claim raises a novel or complex issue of State law, (2) the

13 claim substantially predominates over the claim or claims over which the district court has

14 original jurisdiction, (3) the district court has dismissed all claims over which it has original

15 jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining

16 jurisdiction."  28 U.S.C. § 1367(c)(1)-(4).

17      Accordingly, in the absence of any argument from Plaintiff as to the appropriateness of

18 exercising supplemental jurisdiction, the Court in its discretion will not decline supplemental

19 jurisdiction.  <u>See</u> 28 U.S.C. § 1367(c); <u>Saxe</u>, 2015 WL 4648041, at *9 ("[T]here is no indication

20 that Plaintiff's non-preempted FEHA claim presents novel or complex issues of California law . .

21 .the claim that is not preempted arises out of the same core facts on which the preempted claim is

22 base . . . 1367(c)(3) does not apply because the Court has not dismissed any of the claims over

23 which it has original jurisdiction . . . [and] with regard to § 1367(c)(4), the Court finds no

24 compelling reasons to decline jurisdiction, and Plaintiff does not present any in his pleadings.");

25 <u>Kohler v. Inter-Tel Techs.</u>, 244 F.3d 1167, 1171 (9th Cir. 2001) ("Kohler has waived her

26 objection to the district court's discretionary exercise of supplemental jurisdiction by failing to

27 raise it in the district court . . . [t]he exercise of supplemental jurisdiction under § 1367(c) is

28 therefore treated differently from Article III jurisdiction, which must be examined even when no

1  party has raised it or even if raised for the first time on appeal.").

2  **IV.**

3  **CONCLUSION & ORDER**

4  Based on the foregoing, the Court finds Plaintiff's eighth cause of action for defamation is

5  inextricably intertwined with the collective bargaining agreement and preempted by Section 301

6  of the Labor Management Relations Act.

7  Accordingly, IT IS HEREBY ORDERED that Plaintiffs' motion to remand (ECF No. 5)

8  is DENIED.[14]

9
10  IT IS SO ORDERED.

11  Dated:   **August 1, 2022**

     UNITED STATES MAGISTRATE JUDGE
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27  _____

[14] The Court leaves to the parties, through meet and confer and stipulation if necessary, to "clean up" the docket
     concerning the operative complaint and responsive pleadings.  The parties are reminded the scheduling conference
28  has been continued to October 4, 2022.  (ECF No. 11.)